IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                               No. CR 16-4007 JB

CHARLEY JOE, JR.,

    Defendant.

## UNSEALED[1] MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States' Motion for Upward Departure and/or Upward Variance, filed August 22, 2017 (Doc. 37)("Motion"); and (ii) the Defendant's Sentencing Memorandum and Objections to Presentence Report, filed September 19, 2017 (Doc. 38)("Objections"). The Court held a sentencing hearing on October 3, 2017. The primary issues are: (i) whether Defendant Charley Joe's crime, voluntary manslaughter, was unusually heinous, cruel, or brutal such that, under U.S.S.G. § 5K2.8, the Court should depart upward from the sentencing range that the United States Sentencing Guidelines prescribe; (ii) whether C. Joe's conduct merits an upward variance pursuant to 18 U.S.C. § 3553(a); and (iii) whether C. Joe's conduct merits a downward variance pursuant to 18 U.S.C. § 3553(a). The Court concludes that it will not depart upward, nor vary upward or downward, from the

---

[1] In its Sealed Memorandum Opinion and Order, filed May 10, 2018 (Doc. 44)("Sealed MOO"), the Court ordered that the parties "send to the Court proposed redactions, if any are necessary to protect confidential information, within ten calendar days. After ten calendar days, the Court will file a public version of this Memorandum Opinion and Order." Sealed MOO at 1 n.1. To date, the parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form. Except for this footnote, this Memorandum Opinion and Order is identical to the Sealed MOO.

Guidelines range. The Court has wide discretion, and it usually does not depart or vary upward from the bottom of the Guidelines range unless a particularly aggravating factor is present. Here, the factors that put upward pressure on C. Joe's sentence outweigh the factors that put downward pressure on that sentence, keeping the sentence in the Guidelines range or higher. On balance, a sentence at the bottom of the Guidelines range, 78 months followed by three years of supervised release, is necessary -- but also adequate -- to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and avoid sentencing disparities among defendants with similar records found guilty of similar offenses. Accordingly, the Court will deny the Motion and overrule the Objections.

## FACTUAL BACKGROUND

C. Joe and his brother, Jonathan Joe, the victim, are registered members of the Navajo Nation, and lived on the Navajo Nation Indian Reservation in Shiprock, New Mexico. See Presentence Investigation Report at 2, 4, filed June 7, 2017 (Doc. 31)("PSR").[2] Both of C. Joe's feet are damaged, and he "walks with a constant limp," because he never received treatment after two separate foot injuries. Objections at 11-12. See PSR ¶ 59, at 12.

C. Joe also has a long history of alcohol abuse. See PSR ¶ 63, at 12-13. He started drinking at age twelve, and his longest sober period since then lasted only five months. See Objections at 11. C. Joe is now sixty-eight years old. See PSR ¶ 88, at 16. Further, most of his criminal history relates to alcoholism. See, e.g., PSR ¶¶ 44, 47, at 9 (describing a history of

---

[2]At the sentencing hearing, there were no objections to the factual findings in the PSR, and the Court adopted them as its own factual findings. See Draft Transcript of Sentencing Hearing at 46:11-13 (taken October 3, 2017)(Court)("Tr."). The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version; any final transcript may contain slightly different page and/or line numbers.

criminal conduct involving, among other things, driving under the influence of alcohol and public intoxication).  His father also "died within a few years of his birth."  Objections at 10.

J. Joe "was born with cerebral palsy and only had the use of the right side of his body." Addendum to the Presentence Report at 1, filed September 27, 2017 (Doc. 39)("Addendum"). C. Joe "was fully aware of his brother's medical condition."  Addendum at 1.  Although "the victim reportedly did not let his disability stop him from completing daily activities, cerebral palsy did limit the victim in his movement."  Addendum at 1.

The two brothers had a bad relationship, in which C. Joe "drank a lot, which would cause frequent arguments with the victim."  PSR ¶ 12, at 4.  Indeed, C. Joe had consumed alcohol on the day of J. Joe's death.  See PSR ¶ 86, at 15.  One day, the brothers got into an altercation in which J. Joe "started hitting" C. Joe, "punching him in the mouth, nose, and eye."  PSR ¶ 16, at 5.  The fight got out of control, and, eventually, C. Joe used an axe to attack his brother.  See PSR ¶ 17, at 5.  The resulting wounds killed J. Joe, but he did not die immediately.  See Objections at 4-5.  After using the axe, C. Joe saw the victim lying "on the floor, bleeding from his head."  PSR ¶ 17, at 5.  C. Joe "became scared and ran from the house, leaving the axe by the front door."  PSR ¶ 17, at 5.  "It is unclear when the attack actually occurred, although the timeline suggests it was either Monday, September 12, 2016, in the evening after 5:45 p.m., or Tuesday, September 13, 2016 before 3:45 p.m."  Motion at 4.

On the date of the fight, Debra Benally "went to the victim's residence to purchase corn." Motion at 3.  See Objections at 4.  She saw J. Joe lying on the floor with a bloody arm.  See Motion at 3.  J. Joe was still alive, and he told Benally to call 911, which she did.  See Motion at 3.  "Benally did not know the victim so she could not give the dispatcher his name," though she described the address.  Motion at 3.  She then left the victim's residence.  See Objections at 4.

As she left, "she observed an ambulance and assumed it was going to take care of the victim." Motion at 3.

Benally returned to the residence about an hour later, but no emergency services had arrived. See Objections at 4. J. Joe was still alive. See Objections at 4-5. He "was still on the floor, but had moved closer to the door." Motion at 3. Again, he asked her to call 911. See Motion at 3. Benally called the Northern Navajo Medical Center but "was told there were no ambulances available, and she should call 911." Motion at 3. Benally then called 911, but, again, "was told there were no ambulances available. She was also told they responded to her initial call but were unable to locate the residence." Motion at 3. "Benally was told a unit would be sent when it was available. Benally was with her children and did not want to stay at the residence because she was shaken up." Motion at 3.

"It is unclear when exactly Jonathan Joe expired but it is clear that he was alive for some time after the attack." Objections at 5. "It is also unclear how long the victim suffered from the wounds he sustained, as he was last seen alive at approximately 5:21 p.m. on Tuesday, September 13, 2016, but his body was not discovered until Friday, September 16, 2016 in the morning." Motion at 4. The Office of the Medical Investigator determined that the cause of death was "chop wounds." PSR ¶ 18, at 6. Many "of the victim's injuries were sustained on the left side of his body, which the victim could not use." Addendum at 1.

## PROCEDURAL BACKGROUND

On October 12, 2016, a federal grand jury indicted C. Joe for one count of voluntary manslaughter "in violation of 18 U.S.C. §§ 1153 and 1112." Indictment at 1, filed October 12, 2016 (Doc. 11). C. Joe pled guilty to the Indictment. See Plea Minute Sheet at 1, filed March 23, 2017 (Doc. 29). The PSR assigns C. Joe a total offense level of 28 and a criminal history

category of I, which results in a guideline imprisonment range of seventy-eight to ninety-seven months.  See PSR ¶¶ 41, 46, 70 at 8-9, 14.

   1.   **The Motion.**

   Plaintiff United States of America moves the Court to grant an upward departure and/or an upward variance when sentencing C. Joe.  See Motion at 1.  The United States first argues that an upward departure pursuant to U.S.S.G. § 5K2.8 is warranted, because the victim "suffered a long, agonizing death."  Motion at 2.  The United States asserts that C. Joe's conduct was "unusually heinous, cruel and brutal," and that "the viciousness of the attack, coupled with his failure to render aid, caused the victim to suffer prolonged pain that was tantamount to torture."  Motion at 4.  The United States concludes that the Court should upwardly depart and sentence C. Joe to 180 months, the statutory maximum.  See Motion at 4.  In the alternative, the United States argues that C. Joe's conduct merits an upward variance pursuant to 18 U.S.C. § 3553(a).  See Motion at 4.  The United States contends that the "nature and circumstances of this offense merit an upward variance to a sentence of 180 months," because the victim's cerebral palsy partially paralyzed him, and he suffered for several hours before his death.  Motion at 6.

   2.   **The Objections.**

   C. Joe contends that an upward departure pursuant to U.S.S.G. § 5K2.8 is improper.  See Objections at 4.  He contends that, although J. Joe suffered, local emergency services greatly disserved J. Joe.  See Objections at 4.  C. Joe further asserts that J. Joe's prolonged suffering was not C. Joe's intent, so that suffering should not be held against him.  See Objections at 5.  He adds that the crime itself also was not premeditated, but rather, occurred in the heat of the

moment.  See Objections at 5.  For these reasons, C. Joe concludes that a U.S.S.G. § 5K2.8 upward departure is improper.  See Objections at 5-6.

C. Joe also argues that a sentence of 60 months "is sufficient but not greater than necessary to serve as a deterrent both to Mr. Joe and to other would be offenders."  Objections at 15.  He contends that, because he is sixty-eight years old and in poor health, a sentence at the low end of the Guidelines range, 78 months, would essentially be a life sentence for him.  See Objections at 16.  According to Joe, "when one considers Mr. Joe's infirmities and age, a sentence of 78 months is excessive."  Objections at 16.

C. Joe next contends that the need for the sentence imposed to protect the public is low, because, although C. Joe has a criminal history, none of it -- other than killing J. Joe -- is violent. See Objections at 16.  C. Joe continues that his alcohol problems have caused all of his crimes, and that such a problem is best addressed through counseling during a lengthy period of supervised release, rather than through additional prison time.  See Objections at 16-17.  C. Joe concludes that the Court should not grant an upward departure, and he requests a downward variance to a sentence of 60 months pursuant to 18 U.S.C. § 3553.  See Objections at 17.[3]

### 3. **The Hearing.**

The Court held a sentencing hearing on October 3, 2017.  See Tr. at 1:4-9 (Court).  The United States argued that an upward departure in C. Joe's sentence is warranted, based on the length of time that J. Joe suffered and on C. Joe's failure to seek medical assistance.  See Tr. at

---

[3]The United States subsequently filed the United States' Response in Opposition to Sentencing Memorandum and Objections to the Presentence Report, filed October 2, 2017 (Doc. 40)("Response").  The Response is almost exclusively dedicated to the application of the vulnerable victim enhancement, an issue on which the Court has already ruled.  See Unsealed Memorandum Opinion and Order at 8, filed May 9, 2018 (Doc. 43).  The Response briefly mentions, however, that the "United States adopts the position it has taken in its Motion for Upward Departure and/or Upward Variance."  Response at 6.

15:17-23 (Ramirez). C. Joe responded that it was never his intent for his brother to suffer and that C. Joe believed J. Joe to be dead immediately after the attack. See Tr. at 19:1-11 (Fooks). He continued that, although the crime was violent, it remained within the "heartland" of voluntary manslaughter cases. Tr. at 20:8-13 (Fooks).

After hearing the parties' arguments, the Court observed that the United States focuses on J. Joe's long and agonizing death, but that C. Joe's conduct itself "seems to me to stay within the heartland of conduct that I see in these voluntary manslaughter cases." Tr. at 21:7-9 (Court). The Court continued that most voluntary manslaughter cases are sad and brutal, and that this one is not particularly unusual. See Tr. at 21:11-14 (Court). The Court thus orally denied the United States' request for an upward departure. See Tr. at 21:24-25 (Court).

C. Joe then argued for a downward variance to 60 months. See Tr. at 24:17-19 (Fooks). He asserted that J. Joe started the fight between the brothers, see Tr. at 25:21-22 (Fooks), and that C. Joe had never previously been convicted of a violent crime, see Tr. at 26:20-24 (Fooks). C. Joe added that he needs additional treatment for alcohol abuse and that the Court should take that need into account in considering a downward variance. See Tr. at 31:17-21 (Fooks). The United States responded that the Court should also consider the axe wounds' severity. See Tr. at 46:1-7 (Ramirez).

The Court then identified several factors suggesting a lower sentence, including the relationship between the brothers, the fact that J. Joe started the fight, and C. Joe's health and feet problems. See Tr. at 47:12-48:7 (Court). The Court also identified several factors suggesting a sentence within the Guidelines range or higher, including the seriousness of the offense, respect for the law, providing just punishment, affording adequate deterrence (both general and specific), protecting the public, the need to avoid disparity among defendants with

similar records found guilty of similar conduct, see Tr. at 48:9-49:2 (Court), and the victim's long and agonizing death and gruesome wounds, see Tr. at 49:13-19 (Court). The Court then explained that the upward-pressure factors outweigh the factors suggesting a lower sentence, keeping the sentence in the Guidelines range. See Tr. at 49:19-22 (Court). Regarding the United States' request for an upward departure or upward variance, the Court stated that while this case is certainly sad, there are no particularly aggravating factors, and it remains a "heartland case." Tr. at 50:10-13 (Court). The Court further stated that, typically, if it concludes that a Guidelines range sentence is appropriate, it sentences at the bottom of that range, unless an aggravating factor is present, and, here, none exists. See Tr. at 50:14-19 (Court).

The Court concluded that a sentence of 78 months is both necessary and adequate to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and avoid sentencing disparities among defendants with similar records found guilty of similar offenses. See Tr. at 50:22-51:6 (Court). The Court added that, because C. Joe would also be placed on supervised release, the sentence will provide him with needed education and training to assist him with his alcohol problems. See Tr. at 51:6-10 (Court). For these reasons, the Court concluded that a sentence of 78 months is "sufficient without being greater than is necessary to comply with the purposes [of] punishment set forth in the Sentencing Reform Act," 18 U.S.C. § 3553. Tr. at 51:14-16 (Court). The Court thus imposed a sentence of 78 months, followed by three years of supervised release. See Tr. at 52:19-23 (Court); id. at 56:2-3 (Court).

**LAW REGARDING THE UNITED STATES SENTENCING GUIDELINES**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, thus making the Guidelines

effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  Section 3551 provides that

> a defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense as well as the defendant's history and characteristics; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, because the Guidelines are one of several factors that 18 U.S.C. § 3553(a) enumerates, they are entitled to be considered. See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). The Guidelines are significant, because they "are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006). "This presumption, however, is an appellate presumption, not one that the trial court can or should apply." United States v. Chatto, No. CR 06-2561 JB, 2008 WL 4107149 (D.N.M. May 12, 2008)(Browning, J.). See Rita v. United States, 551 U.S. at 347-48; Gall v. United States, 552 U.S. 38, 40 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory Guideline sentence. See Rita v. United States, 551 U.S. at 347-48; Gall v. United States, 552 U.S. at 40; Kimbrough v. United States, 552 U.S. at 90-91.

## ANALYSIS

The Court concludes that it will neither depart nor vary from the Guidelines range. The Court has wide discretion, and it usually does not depart or vary upward from the bottom of the Guidelines range unless a particularly aggravating factor is present. Here, the factors that apply upward pressure to keep the sentence in the Guidelines range or higher outweigh the factors that apply downward pressure on the sentence. On balance, a sentence at the bottom of the Guidelines range, 78 months followed by three years of supervised release, is both necessary and adequate to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and avoid sentencing disparities among defendants with similar records found guilty of similar offenses. Accordingly, the Court will deny the Motion and overrule the Objections.

### I. THE COURT WILL NOT DEPART UPWARD FROM THE GUIDELINES RANGE UNDER U.S.S.G. § 5K2.8.

The Court concludes that it will not depart upward from the Guidelines range. Under U.S.S.G. § 5K2.8, "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8. Courts interpret the Guidelines "according to accepted rules of statutory construction," beginning with the text itself. United States v. Begaye, 635 F.3d 456, 469 (10th Cir. 2011). "Nothing in the language of § 5K2.8 compels a district court to first establish the 'typical' perpetrator offense conduct for this crime before departing under this provision." United States v. Begaye, 635 F.3d at 469. "Rather, [t]hat section only requires that the court determine that the conduct involved was *unusually* heinous, cruel, brutal, or degrading." United States v. Begaye, 635 F.3d at 469

(emphasis in original)(internal quotation marks omitted). Whether a case is unusual "is largely for the district court to answer. Thus, we must afford great deference to the district court's determination of whether the factual circumstances make this the atypical case." United States v. Checora, 175 F.3d 782, 792 (10th Cir. 1999)(internal citation omitted).

Here, C. Joe's conduct was not unusually heinous, cruel, brutal, or degrading. To be sure, this case's Cain-and-Abel circumstances are tragic, but they do not warrant an upward departure. In United States v. Checora, the attacker, over the course of an hour, dragged the victim fifty feet, slit his throat twice, and then placed a 360-pound iron stove across his body. See 175 F.3d at 793. The Tenth Circuit ruled that the district court acted within its discretion in concluding that such conduct was "unusually brutal within the universe of voluntary manslaughters." 175 F.3d at 793. The Tenth Circuit further explained that the attacker beat the victim "in three separate phases over the course of one hour, and not in one continuous and brief instance like most voluntary manslaughter cases." 175 F.3d at 793. The Tenth Circuit contrasted these facts with other cases in which the victims were respectively "beaten in the course of five minutes" and stabbed after a short family fight. 175 F.3d at 793 (citing United States v. Hatatley, 130 F.3d 1399 (10th Cir. 1997); United States v. Comosona, 848 F.2d 1110 (10th Cir. 1988)).

This case's facts sharply contrast with United States v. Checora's. C. Joe did not drag J. Joe nor place any heavy object on him. C. Joe did not beat J. Joe "in three separate phases over the course of one hour," United States v. Checora, 175 F.3d at 793, but, rather, attacked him "in one continuous and brief instance like most voluntary manslaughter cases," United States v. Checora, 175 F.3d at 793. See PSR ¶ 17, at 5 (explaining that, after C. Joe hit J. Joe with the axe, C. Joe did not touch his brother, and "became scared and ran from the home"). Indeed,

although the exact length of the brothers' altercation is unclear, their fight is more factually analogous to a situation in which the victim was stabbed after a short family fight. See United States v. Checora, 175 F.3d at 793 (citing United States v. Comosona, 848 F.2d at 1111); PSR ¶ 17, at 5 ("I hit him, and he hit me, and I guess I used the axe on him.").

Further, courts interpret the Guidelines "according to accepted rules of statutory construction," beginning with the text itself. United States v. Begaye, 635 F.3d at 469. The relevant Guideline states that, "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct." U.S.S.G. § 5K2.8 (emphasis added). The word "may" in contrast to "must" or "shall" shows that the Court has discretion to depart upwardly, but it is not required to do so. Additionally, whether a case is unusual "is largely for the district court to answer. Thus, we must afford great deference to the district court's determination of whether the factual circumstances make this the atypical case." United States v. Checora, 175 F.3d at 792. Given the Court's wide discretion and this case's facts, the Court concludes that C. Joe's conduct is not "unusually heinous, cruel, brutal, or degrading to the victim." U.S.S.G. § 5K2.8.

All of the drinking and voluntary manslaughter cases from the reservation are sad, because they often involve family members or at least friends. That C. Joe panicked and fled, instead of calling for help or later returning is troubling and regrettable, but not so different from many other cases the Court and other District Judges in the District of New Mexico have seen. The ambulance and 911 problems are tragic, but the Court is not comfortable shifting all of the blame for J. Joe's prolonged death to C. Joe, even though the axe wounds that C. Joe inflicted are the but-for cause of J. Joe's death. The facts here are squarely in the heartland of the voluntary

manslaughter cases that the Court sees all too frequently given the alcohol problems on the reservation.

Finally, even if U.S.S.G § 5K2.8 permits an upward departure in this case, the Court is not convinced that an upward departure is warranted under the case's facts. The Court disagrees with the United States' contention that the circumstances in this case are more heinous or cruel than in most other voluntary manslaughter cases that the Court sees. See Motion at 4. Unfortunately, most voluntary manslaughter cases have some cruel and shocking facts. The Court has trouble distinguishing this case from many other voluntary manslaughter cases that the Court and other federal judges in this District and across the country have seen. See, e.g., United States v. Checora, 175 F.3d at 793 (citing United States v. Comosona, 848 F.2d at 1111)(victim stabbed after short family fight). Thus, even if departure is authorized, see U.S.S.G. § 5K2.8, under this case's facts, the Court will exercise its discretion not to depart, because the Court concludes that this case remains within the heartland of voluntary manslaughter cases. See United States v. Checora, 175 F.3d at 792.

## II.  A VARIANCE IS NOT APPROPRIATE UNDER THIS CASE'S CIRCUMSTANCES.

18 U.S.C. § 3553(a) "sets forth numerous factors that guide sentencing." United States v. Booker, 543 U.S. at 261. In that provision, Congress directs courts to impose sentences "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D). When performing that task, courts need to consider: (i) the Guidelines; (ii) the nature of the offense as well as the defendant's history and characteristics; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

The Court has considered all of these factors, and concludes that a sentence at the bottom of the Guidelines range, 78 months followed by three years of supervised release, is reasonable, meaning sufficient, but not greater than necessary, to comply with the four purposes that 18 U.S.C. § 3553(a)(2) enumerates. Accordingly, neither an upward nor a downward variance is warranted. There are six factors suggesting a lower sentence, perhaps below the Guidelines range. These include: (i) the bad relationship between the brothers, see PSR ¶ 12, at 4; (ii) the fight got out of control, see PSR ¶ 16, at 5; (iii) J. Joe started the fight that resulted in J. Joe's death, see PSR ¶ 16, at 5; (iv) the Court's task as a district court to impose a reasonable sentence that accurately reflects the § 3553(a) factors, see United States v. Martinez-Barragan, 545 F.3d 894, 904 (10th Cir. 2008); United States v. Corchado-Aguirre, No. CR 15-0393, 2015 WL 10383207, at *8 (D.N.M. 2015)(Browning, J.), meaning "a sentence sufficient but not greater than necessary to comply with the purposes of section 3553(a)(2)," United States v. Martinez-Barragan, 545 F.3d at 904; (v) C. Joe's health problems related to alcohol, which the Court can and should address via supervised release, rather than incarceration; and (vi) C. Joe's feet injuries, see Tr. at 47:12-48:7 (Court). Indeed, C. Joe's long history of alcohol abuse has caused health problems. See Objections at 11. He started drinking at age twelve, and his longest sober period since then lasted only five months. See Objections at 11. He is now sixty-eight years

old.[4]  See PSR ¶ 88, at 16.  Additionally, both of his feet are damaged, and he "walks with a constant limp," because he never received treatment after two separate foot injuries.  Objections at 11-12.

There are, however, nine other factors suggesting a sentence within the Guidelines range or higher, because C. Joe's crime of voluntary manslaughter was violent, bloody, and deadly. See PSR ¶ 17, at 5.  These factors include: (i) the need for the sentence to reflect the seriousness of the offense; (ii) the need for the sentence to promote respect for the law; (iii) the sentence must provide just punishment, which in a voluntary manslaughter case, puts upward pressure on the sentence; (iv) the sentence must afford adequate deterrence -- both general and specific; (v) the sentence must protect the public; and (vi) the victim's long and agonizing death.  See 18 U.S.C. § 3553(a)(2)(A)-(C); Motion at 6.  Further, a seventh factor, the need to avoid sentencing disparities among defendants with similar records found guilty of similar conduct, puts upward pressure on the sentence and suggests a Guidelines range sentence.  See 18 U.S.C. § 3553(a)(6). Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, because the Guidelines are one of several factors that 18 U.S.C. § 3553(a) enumerates, they should be considered.  See Rita v. United States, 551 U.S. at 349 ("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement

---

[4]18 U.S.C. § 3553(a)(1) also directs the Court to consider C. Joe's "history and characteristics." 18 US.C. § 3553(a)(1).  For this case's purposes, the Court considers this factor in connection with C. Joe's alcohol problems, because, unfortunately, alcohol has defined C. Joe's history and characteristics.  Ever since he began drinking at age twelve, alcohol "perhaps became the biggest factor in determining Mr. Joe's lot in life." Objections at 11.  The Court also notes C. Joe's feet problems, discussed above, and that his "father died within a few years of his birth." Objections at 10.

community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d at 593 (describing the Guidelines as more than "just one factor among many"). One of the Guidelines' purposes is to avoid sentencing disparities, and, with this purpose in mind, the Court typically sentences at the bottom of the Guidelines range, unless a particularly aggravating factor is present, and, as explained above, none exists here. See supra § I, at 12-14.

Eighth, while supervised release can help with some problems, such as C. Joe's alcohol problems, supervised release can do little to address the sort of violence seen here. Ninth, again, while the Court's task is to impose a reasonable sentence that is "sufficient but not greater than necessary to comply with the purposes of section 3553(a)(2)," United States v. Martinez-Barragan, 545 F.3d at 904, under this case's violent facts, that goal puts upward pressure on the sentence. On balance, the six downward factors do not outweigh the nine factors that put upward pressure on the sentence, keeping the sentence in the Guidelines range or higher. See Tr. at 49:19-22 (Court).

Additionally, because the Court sentences C. Joe to three years of supervised release, the sentence will provide him "with needed educational . . . training, medical care, or other correctional treatment," 18 U.S.C. § 3553(a)(2)(D), to assist him with his alcohol problems, see Tr. at 51:6-10 (Court). The Court has considered C. Joe's request that his alcohol problems be addressed through counseling and supervised release, rather than additional prison time, see Objections at 17, but, because of his crime's violent nature and the nine upward factors discussed above, the Court cannot properly grant such a request. Finally, the Court recognizes the "need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), and thus orders C. Joe to pay $366.80 to J. Joe's family and the Crime Victims Reparation Commission at a rate of no

less than $25.00 per month, see Sentencing Minute Sheet at 1, filed October 3, 2017 (Doc. 41). For these reasons, a sentence of 78 months followed by three years of supervised release is reasonable, meaning "sufficient without being greater than is necessary to comply with the purposes [of] punishment set forth in the Sentencing Reform Act." Tr. at 51:14-16 (Court). Accordingly, the Court will not vary upward or downward from the Guidelines.

**IT IS ORDERED** that: (i) the requests in the United States' Motion for Upward Departure and/or Upward Variance, filed August 22, 2017 (Doc. 37), are denied; and (ii) the objections in the Defendant's Sentencing Memorandum and Objections to Presentence Report, filed September 19, 2017 (Doc. 38), are overruled to the extent that they seek a downward variance.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Elaine Y. Ramirez
Kristopher N. Houghton
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Stephen P. McCue
  Federal Public Defender
Devon M. Fooks
  Assistant Federal Public Defender
Office of the Federal Public Defender
Albuquerque, New Mexico

    *Attorneys for the Defendant*